UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **MONICA JOHNSON, ET AL** | **CIVIL ACTION NO. 1:18-CV-01472** |
| **VERSUS** | **JUDGE DRELL** |
| **WILLIAM E. HILTON, ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

**MEMORANDUM IN SUPPORT OF EXPEDITED MOTION TO QUASH OR ALTERNATELY, REQUEST FOR PROTECTIVE ORDER, AND TO MODIFY SCHEDULING ORDER**

NOW INTO COURT, through undersigned counsel, come SHERIFF WILLIAM E. HILTON, SHERIFF OF RAPIDES PARISH ("SHERIFF"), WILL GEORGE, CASSIE SAUCIER, and MARK PARKER (collectively "Movants"), who respectfully submit the following Memorandum of Law in Support of their Expedited Motion to Quash or Alternately, Request for Protective Order, and to Modify Scheduling Order:

**1. INTRODUCTION AND FACTS**

By Order of the Court on October 22, 2019, the Proposed Plan of Work [Doc. 69] submitted by the parties became the Scheduling Order for this matter. [Doc. 68]. The Scheduling Order set two deadlines which are pertinent here. The first was the final date for supplementing the parties' prior written discovery requests in light of the Court's lifting of previous limitations on the subject matter and scope of discovery which was set for November 22, 2019. [Doc. 69]. The second pertinent deadline is that for the completion of non-expert discovery which was set for February 1, 2020. [Doc. 69]. Together the parties have diligently worked on the discovery which was remaining at the time

of the adoption of the Scheduling Order, but recently several issues have arisen which makes the competent completion of planned discovery by the current deadline impossible.

The following discovery was previously, or is still currently, scheduled to take place during the week of January 27, 2020:

1. The redeposition of Lisa Strother and Jennifer Gordon on January 28, 2020;
2. The redeposition of Monica Johnson, Christopher Johnson, and Velma Johnson on January 28, 2020;
3. The depositions of William E. Hilton and Will George on January 30, 2020;
4. The corporate deposition of the Rapides Parish Sheriff pursuant to Rule 30(b)(6) on January 30, 2020; and
5. The inspection of the premises at issue on January 31, 2020.

On January 23, 2020 the Plaintiffs provided their Formal Objection to Defendants' Notice to Enter Upon Land to the Defendants. (Ex. 4)[1]. Therein, the Plaintiffs asserted that they are currently treating for emotional trauma/anguish. Despite prior discovery requests to which this new information about continuing mental health treatment was responsive, and despite the Plaintiffs' depositions being mere days away, this vital information concerning treatment for the injuries alleged herein was only disclosed in order to object to the scheduled inspection. The Plaintiffs did not seasonably supplement their discovery responses until they were prompted by the correspondence from Defendants' counsel on January 24. 2020 reminding them of the obligation to supplement and despite the passing of the deadline for supplementing prior discovery responses, set for November 22, 2019 in the current Scheduling Order. [Docs. 68, 69] and (Ex. 5). Even then, the Plaintiffs only revealed the names of their treating physicians and have provided no medical records concerning this pertinent medical treatment. (Ex. 10 - Supplemental Discovery Response ). Furthermore, the

---

[1]In an effort to expedite the Court's receipt of the Defendants' Motion and Memorandum in Support prior to the telephone conference on January 27, 2020 some exhibits to the Motion and Memorandum will be provided via supplement.

Plaintiffs contend that these *treating physicians* have been designated as experts, and have intimated that discovery requests to them for records would not be proper at this time (planning instead only to provide these records when expert reports are due). Clearly a Plaintiffs' medical records are pertinent to a competent examination but are being practically denied to the Defendants here.

A further issue with the scheduled redeposition of the Plaintiffs arose after the Defendants provided the Plaintiffs with a disc containing a download of Monica Johnson's cell phone, which the Defendants believed to have been created shortly after the June 8, 2018 incident which forms the basis for this suit. (For clarity, this will be referred to as the "download"). (Ex. 7). Monica Johnson's cell phone was also seized pursuant to her arrest in December of 2018. Shortly after its seizure in December, counsel for Monica Johnson contacted the undersigned, asserted that the cell phone contained privileged communications between himself and Monica Johnson, and asked that the cell phone not be examined. (For clarity, this will be referred to as the "cell phone"). (Ex. 11). To the Defendants' knowledge that request was, and continues to be, complied with completely. After receiving the download, counsel for Plaintiffs again asserted the attorney-client privilege, and subsequently asserted Monica Johnson's privacy interest, and asked that the download not be reviewed. (Ex. 7).

As stated, the Defendants believe the download to contain data from shortly after the June 8, 2018 incident, which would presumably preclude the download from containing privileged communications. Despite the real possibility that the download contains no privileged information, the Plaintiffs insist that it not be examined and communications with Plaintiffs' counsel suggest a motion concerning the download and its use in this matter will be filed shortly. Without access to the data, excluding any privilege materials, the Defendants' efforts to question the Johnsons, along

with Lisa Strother and Jennifer Gordon, about the alleged fraudulent warrant affidavit and the circumstances which led to the June 8, 2018 search warrant execution will be prejudiced. Photos from the phone which were produced separately indicate cause for the search and the Defendants' good faith belief that the search was necessary which undermines the allegation that the warrant affidavit contained false information. (Ex. 13). An opportunity to review the contents of the download is accordingly crucial to a competent examination of the Plaintiffs, Gordon, and Strother. However, the Defendants are unable to review those contents while the Plaintiffs claim that they contain privileged communications.

As an additional wrinkle to the Gordon and Strother depositions, on January 25, 2020 at approximately 10:30 p.m. the Defendants received correspondence from William Most, an attorney stating he represented Jennifer Gordon, which raised issues about the deposition subpoena of Gordon. That correspondence asked that the subpoena be withdrawn and that the Defendants not seek further pre-trial discovery from Gordon. Based upon Most's correspondence, the Defendants agreed to cancel Gordon's deposition and will pursue motion practice to reset it. The same issues are likely to impede Strother's deposition as well, and out of an abundance of caution the Defendants also cancelled that deposition. Motion practice will be necessary there as well. The issue here is that the Plaintiffs have already taken Gordon and Strother's depositions. When those were initially being scheduled, the Defendants objected to scheduling them at that time because the Defendants lacked information necessary for their questioning. Plaintiffs insisted that the depositions move forward and agreed that they would consent to resetting those depositions in the future if the Plaintiffs were allowed to depose Gordon and Strother as previously scheduled. The Defendants agreed and, while the Defendants were present at those depositions through counsel, they did not question the

witnesses beyound securing contact information.  This presents a situation in which the Plaintiffs, but not the Defendants, have had a proper opportunity to depose crucial witnesses.  Strother and Gordon are the backbone of the Plaintiffs' new allegations that the warrant affidavit was fraudulent, but now the Defendants have been prevented from deposing them

Next, the scope of the inspection of the Plaintiffs' property has not been set. As stated previously, the Defendants provided Notice of Entry Upon Land, and the Plaintiffs provided formal objections to the inspection noticed there.  (Ex. 3 and 4).  Those objections included a time limit, limitations on what portion of the premises could be examined, and limitations on the physical touching of surfaces in the home. Defendants then provided a response to the objection. (Ex. 14). While counsel for the parties was able to come to some agreement on some issues, others remained open.  (See emails on issue, Ex. 15, in globo).

Finally, the Rapides Parish Sheriff, beginning early on Thursday, January 23, 2020  started investigating  Detention Center 3  facility, in Alexandria, LA.  This investigation included the Metro Narcotics Agents who executed the search warrant at issue here.  Will George, a named Defendant, is lead Agent.  While this investigation is on-going, the availability of the named Defendants, as well as one or more other 30(b)(6) witnesses, for discovery purposes is limited and to date has prevented the Defendants from properly preparing for the scheduled depositions.  (Ex. 15, in globo).

As these issues arose, the Defendants have kept an open dialogue with the Plaintiffs in an attempt to ameliorate the harm that will be done to their defense if the depositions of Will George, Sheriff Hilton, and the Rapides Parish Sheriff moves forward as scheduled, and the discovery deadline remains in place.  The Plaintiffs have steadfastly refused to consent to an extension of discovery, or to the movement of the scheduled depositions, necessitating the current Motion.  (Ex.

15, in globo). As the discovery at issue is scheduled for shortly after the filing of that Motion and Memorandum in Support, expedited consideration is also requested.

    **II.    LAW AND ARGUMENT**

    **A.    Motion to Quash, or Alternately for Protective Order**

FRCP Rule 26(b)(1) provides the general rule regarding scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its benefit. Information within this scope of discovery need not be admissible to be discoverable.

FRCP Rule 26(c) allows the court to further limit that scope by granting a protective order where the discovery at issue violates the stated scope of discovery including cases, such as here, where the discovery concerns irrelevant matters and is not proportional to the needs of the case. While Rule 26 provides for broad and liberal discovery, upon a showing of good cause, a court may issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. FRCP Rule 26(c). This rule confers broad discretion on a court to decide when a protective order is appropriate and to what degree protection is afforded. Seattle Times Company v. Rhinehart, 467 U.S. 20,36 (1984). The burden is upon the party seeking the protective order to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped inconclusive statements. In re Terra International, 135 F.3d 302,306 (5th Cir. 1998).

The Fifth Circuit has recently explained that the federal courts have super-imposed a somewhat demanding balance of interests pursuant to this rule. Under the balancing standard, the district court must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also consider relevant public interests in this analysis. Carzola v. Koch Foods of Mississippi, LLC. 838 F.3d 540,556. (5th Cir 2016).

Initially it must be noted that the Defendants do not object to the taking of the deposition of Will George, Sheriff Hilton, or the Rapides Parish Sheriff. The Defendants merely object to taking those depositions as currently scheduled. As detailed above, the Defendants, through no fault of their own, lack crucial evidence, in the form of Monica Johnson's cell phone data, which could help them to prepare for those depositions. Further, without that information, as well as the Plaintiffs' medical records, the Plaintiffs' depositions can not move forward as planned.[2] Those depositions were scheduled with the intent, in part, to discover the Plaintiffs' explanation for the new allegations in the Fourth Amended Complaint, which include the allegation that Will George fraudulently produced the warrant affidavit. Additionally, as described above, the Defendants are currently engaged in an intensive investigation which demands their utmost attention. Defense counsel has been unable to meet with the deponents due to that investigation and in fact has had to postpone scheduled meetings twice. To force the Defendants to sit for these depositions as scheduled, without time to prepare and without necessary evidence would be to penalize them for protecting the citizenry of Rapides Parish as they are commissioned to do. Here the Court must balance the

---

[2]Though nothing physically prevented the Plaintiffs' depositions from taking place as scheduled, to do so without the benefit of the cell phone download data or the Plaintiffs' newly disclosed medical records would be extremely prejudiced to the defense of the claims. Especially considering that these would be the second deposition for each Plaintiff and the granting of a third is highly unlikely.

hardship to the Defendants of attending the depositions as scheduled, rather than reschedule them for a later date, against the probative value to the other party. While the probative value to the Plaintiffs is likely high, the probative value of *conducting these depositions at the time scheduled* is non-existent. Allowing the Defendants to prepare properly for their depositions, where their inability to do so before the depositions as scheduled is through no fault of their own, does not harm the Plaintiffs in any way. Further, the Fifth Circuit has found that the determining Court should consider relevant public interests when applying the balancing test. Here, the public's interest in the continuing criminal investigation is high, while the public's interest in the Plaintiffs taking these depositions, again, *as currently scheduled*, is low. The Defendants accordingly ask that the Court grant the requested protective order, requiring the Plaintiffs to reschedule the depositions at issue at a later date after the information described above has been provided and the Defendants are available.

> **B.** **Motion to Modify Scheduling Order**

The Defendants also move to modify the current Scheduling Order. More particularly, the Defendants seek to have the current discovery deadline suspended and/or extended until such time that the discovery issues detailed above have been resolved. As that deadline is set by a Scheduling Order, it implicated Rule 16.

Generally, Courts look to Rule 16 when determining whether a discovery deadline should be upset. In the case of Logan v. Madison Par. Det. Ctr., No. 3:12CV-2221, 2013 WL 5781313, at *3 (W.D. La. Oct. 25, 2013), the Monroe Division of the Louisiana Western District Court was presented with a Motion to Compel and Motion for Extension of Discovery Deadlines brought by the plaintiff in that matter. The discovery deadline at issue in that case was set in a Memorandum

Order, considered a Scheduling Order. The court in Logan applied the standard applicable to requests to modify a scheduling order and found that the deadline there, "c[ould] only be modified for 'good cause and with the judge's consent.' Fed.R.Civ.P. 16(b)(4)." Logan, 2013 WL 5781313, at *3. "[T]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.' . . . the party who seeks to modify a scheduling order deadline must show that, despite acting diligently, it will still be unable to meet that deadline." Hernandez v. Mario's Auto Sales, Inc., 617 F. Supp. 2d 488, 492 (S.D. Tex. 2009).

> In the context of an untimely "motion to submit expert reports, designate experts, [ ] amend the pleadings, [or complete discovery] the Fifth Circuit Court of Appeals applies a four-factor balancing test to determine whether good cause exists: (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice."
> Briggs v. Phebus, 2014 WL 1117888, at *4 (E.D. La. Mar. 19, 2014)(citing Hernandez, 617 F. Supp. 2d at 493).

Here, despite acting diligently, the Defendants are unable to complete the discovery which was previously scheduled for the week of January 27, 2020. Despite propounding discovery seeking medical information from all Plaintiffs, their mental health treatment was not disclosed to the Defendants until less than a week prior to the Plaintiffs' second depositions. Not only was the disclosure of treatment extremely late, but the Plaintiffs have not provided, and will not provide records from that treatment. The Plaintiffs state that they do not have those records, and the Defendants have no reason to disbelieve them, but the Plaintiffs certainly have *access* to those records, where the Defendants do not. Furthermore, the Plaintiffs have affirmatively stated that they will not be providing those records as they assert that the Plaintiffs treating physicians are also

designated experts, and accordingly they are under no obligation to provide their records prior to the deadline for expert reports. In addition to the absence of medical records, the Defendants are also prevented from utilizing data from Monica Johnson's cell phone download as the Plaintiffs have asserted attorney-client privilege over that data. The absence of these crucial pieces of evidence puts the Defendants in the position of either not taking the Plaintiffs' depositions, or taking them without necessary information about medical treatment and the circumstances surrounding the incident and being forced to seek a third deposition of each after the discovery deadline had passed.

Concerning the depositions of Gordon and Strother, the Defendants did everything they could to work with the Plaintiffs when those depositions were initially scheduled. Based on the agreement from the Plaintiffs that those depositions could be continued later, once necessary information had been obtained, the initial depositions went ahead. As the criminal charges against Strother which immediately proceeded her providing information for the warrant affidavit, are still unresolved (based upon information and belief), and Gordon's testimony is inextricably entwined with Strother's, the Defendants sought to set those depositions as late as possible so that such any prosecution could work itself out. Initially, the Defendants chose to wait for the charges to be worked out, but as the deadline approached were forced to move forward with depositions. However, the subpoena for Gordon's testimony was met with correspondence from her attorney, seeking to quash it. As those grounds also apply to Lisa Strother, the Defendants cancelled those depositions, leaving them without time, despite their diligence, to reschedule prior to the discovery deadline.

The Defendants' own depositions were discussed at length above. Suffice it to say that the issues surrounding the Defendants' depositions were also caused through no fault of the Defendants.

Again, despite the Defendants' diligence, a crucial piece of discovery cannot be completed by the deadline provided by the Scheduling Order.

The property inspection is also a potential issue. The Defendants have diligently pursued that inspection and are now only held up by the Plaintiffs' objections. Though the parties were able to narrow some of those objections, it is uncertain whether the noticed inspection will still take place, potentially depriving the Defendants of yet another necessary piece of evidence if the discovery deadline is allowed to pass without a modification to the Scheduling Order.

Finally, the issues as outlined are all discovery issues that must be taken up prior to the discovery deadline. The Defendants anticipate that the Plaintiffs will be filing discovery motions of their own which the Court will rule on in due course. If the deadline is allowed to pass without the evidence sought, the Defendants may never get an opportunity to conduct adequate discovery based on the cell phone download or the Plaintiffs' mental health records.

Applying the four-factors as noted by the Briggs court, it is clear that the Scheduling Order should be modified. Regarding the first factor–the explanation for the failure to adhere to the deadline– the Defendants have shown that they have diligently pursued the necessary discovery which will not be completed by the Scheduling Order's discovery deadline. The second factor–the importance of the proposed modification to the scheduling order–also weighs in favor of a modification. The discovery at issue goes to the crux of the Plaintiffs' new allegations. Gordon and Strother have both testified that the warrant affidavit contains false information. Without a modification of the deadline the Defendants will not be allowed to challenge those statements. The inspection at issue concerns the property damage alleged to have occurred and should serve to help the Court and the jury understand the layout of the space where the incident occurred. Finally, the

importance of questioning the Plaintiffs after new causes of action have been added in the latest Amended Complaint would be difficult to overstate. In order to properly defend themselves the Defendants must know the factual contours of those new allegations which only the Plaintiffs can provide. Those depositions and the inspection, along with the cell phone download and medical records at issue, are necessary to the defense of this action. The third factor–potential prejudice–is present, but weak. The Plaintiffs have an interest in moving their case forward, but would be doing so here against an unfairly prejudiced party. Again, the Plaintiffs failed to seasonably supplement their discovery responses, which played a large role in the delay at issue. Further, the Plaintiffs are in a position to resolve the cell phone download issue, but have not done so. Finally, the fourth factor–the availability of a continuance to cure such prejudice–is also weak. While the Plaintiffs will argue their interest in moving the case forward, any harm caused them by the constitutional violations alleged in their latest Amended Complaint will not be worsened by delaying the discovery deadline. Thus, on balance, the four factors weigh in favor of a modification. The Defendants (as well as the Plaintiffs) were diligent in their efforts to complete discovery by the Scheduling Order's deadline, but despite those efforts it can not be done. Modifying the Scheduling Order would allow this litigation to continue forward with all parties on equal footing, and the Defendants would again pray for such a modification as the Court deems appropriate.

### III.  CONCLUSION

For the reasons detailed above, the Court should granted the Defendants' Motion to Quash, or alternately issue a Protective Order requiring that the Defendants' depositions be rescheduled. Good cause has been shown and the Plaintiffs will not be prejudiced by rescheduling. In conjunction with granting the Motion to Quash, or alternately for Protective Order, the Court should also grant

the Defendants request to modify the Scheduling Order and reset the discovery deadline at a date to be determined later. Myriad discovery issues beyond the Defendants' control have combined to make the completion of necessary discovery by the current deadline impossible, despite the Defendants' diligence.

    Respectfully Submitted:

    **PROVOSTY, SADLER & deLAUNAY, APC**

    By:/s/ H. Bradford Calvit
    H. BRADFORD CALVIT (#18158)
    bcalvit@provosty.com
    ELI J. MEAUX (#33981)
    emeaux@provosty.com
    934 Third Street, Suite 800 (71301)
    P.O. Box 13530
    Alexandria, LA 71315-3530
    P: 318/767-3133   F: 318/767-9588
    ATTORNEYS FOR DEFENDANTS,
    SHERIFF WILLIAM E. HILTON, SHERIFF OF RAPIDES PARISH, WILL GEORGE, MARK PARKER AND CASSIE SAUCIER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27[h] day of January, 2020, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF EXPEDITED MOTION TO QUASH OR ALTERNATELY, REQUEST FOR PROTECTIVE ORDER, AND TO MODIFY SCHEDULING ORDER with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

Tarak Anada
Jones Walker (NO)
201 St. Charles Ave., Ste 5100
New Orleans, LA 70170
P: 504-582-8322  F: 504-589-8322
Email: tanada@joneswalker.com

Michael Noel Antoon
Vamvoras Schwartzberg & Antoon
1111 Ryan St.
Lake Charles, LA 70601
P: 337-433-1621   F: 337-433-1622
Email: antoon@vslaw.com

I further certify that I have forwarded the foregoing document via facsimile and/or first-class mail to the following non-CM/ECF participants: NONE.

/s/ H. Bradford Calvit
H. BRADFORD CALVIT